**BASIC BOATS, INC., for the Use and Benefit of LUMBERMENS MUTUAL CASUALTY CO., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 364–69.**

United States District Court,
E. D. Virginia,
Norfolk Division.

April 13, 1970.

Peter W. Rowe, Norfolk, Va., for plaintiff.

Thomas F. McGovern, Admiralty & Shipping Section, U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM

WALTER E. HOFFMAN, Chief Judge.

In this action filed on July 24, 1969, Basic Boats, the owner of a sailing ketch known as CONJUR MAN, suing by its insurance carrier, alleges that on July 27, 1967 the destroyer USS WALLACE L. LIND answered the distress call from the CONJUR MAN and, in conducting rescue and salvage operations, negligently damaged the 34 foot sailing vessel to the approximate extent of $15,000 and that the insurance carrier has paid Basic Boats the sum of $11,809.50. The action is maintained under the Suits in Admiralty Act, 46 U.S.C. §§ 741–752, and the Public Vessels Act, 46 U.S.C. §§ 781–790. Under either act the suit must be brought *only* within two years after the cause of action arose. Thus, Basic Boats and its insurance carrier waited until three days prior to the expiration of the statutory period.

On September 12, 1969, the United States filed its answer and counterclaim, the latter asserting a claim for salvage, including life salvage. The plaintiff has moved to dismiss the counterclaim as time-barred under 46 U.S.C. § 730. The United States counters by saying that 46 U.S.C. § 731 makes the two-year limitation inapplicable as the WALLACE L. LIND is admittedly a ship of war or a Government ship appropriated exclusively to a public service. The United States further argues that, even if the counterclaim is time-barred, the doctrine of relation back under Rule 15(c), Federal Rules of Civil Procedure, should be applied, thereby relating the counterclaim back to the date of the institution of the action on July 24, 1969. Finally, the Government states—and the plaintiff does not seriously dispute—that the counterclaim may be considered by way of recoupment even if the counterclaim, as to its affirmative nature, must fail.

All of the equities presented by these issues are on the side of the Government. The United States expends large sums of money in training and making available men, ships, aircraft and other equipment to protect lives and vessels at sea. But for United States v. The James L. Richards, 179 F.2d 530 (1 Cir. 1950), this Court would be inclined to hold that 46 U.S.C. § 731, as applied to the facts of this case, makes 46 U.S.C. § 730 (the two-year limitation statute) inapplicable. Recognizing that the decisions of the United States Court of Appeals for the First Circuit are not absolutely binding upon a district court in another circuit, such decisions are nevertheless highly persuasive. Moreover, if any injustice was created by the 1950 decision in *James L. Richards,* there was ample time to amend the interpretation placed upon 46 U.S.C. §§ 730, 731.

It has not been the policy of the United States to maintain actions for salvage awards, especially against the owners of small vessels. The action of the insurance carrier in this case may well invite increased litigation along these lines, all to the ultimate expense of the insurance

carrier. However, this discussion is aside from the issues.

In *James L. Richards*, the United States brought the action for a salvage award on behalf of the Lord High Admiral of Great Britain and Northern Ireland as the salvage efforts had been afforded by His Majesty's Rescue Tug BUSY, and also on behalf of the tug's officers and men. Suit was filed approximately two years and eight months after the salvage services were rendered. The First Circuit held that § 5 of the Salvage Act of August 1, 1912, 37 Stat. 242, 46 U.S.C. § 731, "prevents application of the Act to ships of certain described kinds, not to governments, or to public officers or servants, and the only ships involved as legal entities in cases of marine salvage are the vessels salved." Thus, the court reasoned, § 5 of the Act "was intended to exclude only Government ships as legal entities." The construction, while strained, is inferentially supported by the later passage of the Suits in Admiralty Act of March 9, 1920, 41 Stat. 525, 46 U.S.C. §§ 741, 742, and the Public Vessels Act of March 3, 1925, 43 Stat. 1112, 46 U.S.C. § 781. Nevertheless, but for *James L. Richards*, the court would be inclined to hold to the contrary.

■ Having concluded that the salvage claim was not asserted by the United States until more than two years following the date the salvage services had been performed,[1] we turn to the argument that Rule 15(c), Federal Rules of Civil Procedure, is applicable. We do not agree. Rule 15(c) refers to an amendment, whereas the Government's claim for salvage is asserted by way of a counterclaim which is governed by Rule 13.

■ Since the facts supporting the counterclaim undeniably arose out of the same cause of action which gives rise to plaintiff's suit, there is ample authority to the effect that the counterclaim should be treated as an affirmative defense by way of recoupment, and this is true even though as an affirmative cause of action it may be barred by limitation. Pennsylvania R. Co. v. Miller, 124 F.2d 160 (5 Cir. 1941); Luckenbach Steamship Co. v. United States, 312 F.2d 545 (2 Cir. 1963); United States v. Western Pac. R. R., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).[2]

■ Whether a claim for life salvage may be treated by way of recoupment is not decided herein. Under 46 U.S.C. § 729 it is provided that salvors of human life, who have taken part in the services rendered, are entitled to a fair share of the remuneration awarded to the salvors of the vessel, her cargo, and accessories. Since there will be no sharing of remuneration in this case, the individuals will receive nothing. It is well settled, however, that the salving vessel and its owners may participate in such remuneration and, therefore, the overall value of life salvage, if any, should be initially considered for recoupment purposes and, hypothetically, the total amount by way of recoupment would have to be reduced by the amount which would have been awarded to the individuals aboard the WALLACE L. LIND for their services if an affirmative action had been timely maintained.

An order will be entered upon presentation treating the counterclaim as an affirmative defense by way of recoupment.

---

1. There is no contention that the sailing vessel was not available for arrest during the two-year period if the United States had elected to maintain its claim for salvage.

2. In Wright, Federal Courts, § 79 (1963), it is said that the better rule is that a counterclaim which arises out of the same cause of action may be asserted for the purpose of recoupment to prevent or reduce a judgment, but affirmative relief will not be given on such counterclaim if it is time-barred.